**In re David Steven BERG, Debtor.**

**Sara BLAUSTEIN, Plaintiff,**

v.

**David Steven BERG, Defendant.**

Bankruptcy No. 891–83750–20.
Adv. No. 892–8095–20.

United States Bankruptcy Court,
E.D. New York,
At Westbury.

May 12, 1994.

M. David Graubard, Kera & Graubard, New York City, for plaintiff.

Scott Mandelup, Pryor & Mandelup, Mineola, NY, for defendant/debtor.

## DECISION, ORDER AND JUDGMENT

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Before the Court are two motions for summary judgment, one filed by the debtor, DAVID STEVEN BERG ("Debtor"), and one by plaintiff, SARA BLAUSTEIN ("Plaintiff"). The issue at bar is whether a debt owed by Debtor to his former spouse, Plaintiff, is nondischargeable as being in the nature of support, maintenance or alimony.

For the reasons set forth below, the Court holds that Debtor's motion for summary judgment is **GRANTED;** Plaintiff's motion for summary judgment is **DENIED;** the debt owed by Debtor to Plaintiff, which derives from the parties' separation agreement is not in the nature of support, maintenance or alimony, but rather is a property settlement, and is **DISCHARGEABLE.**

### RELEVANT FACTS

Plaintiff, formerly known as Sara Esther Berg, and Debtor are former spouses; they were married on November 5, 1967. During the marriage, Plaintiff and Debtor had three children and resided in a home in Staten Island, New York. Plaintiff was a homemaker and did not maintain employment outside the home. The parties separated in October of 1982.

Plaintiff and Debtor entered into a separation agreement, dated October 12, 1992 ("Separation Agreement"), which provided for a division of the marital assets and for support and maintenance payments by Debtor to Plaintiff and the children. Debtor was the sole shareholder of a business, not described further in any of the parties' papers, which was not disposed of by the Separation Agreement and was kept by Debtor. The Separation Agreement provided that Plaintiff would have sole custody of the children and continue to reside in the marital home. Plaintiff and Debtor were subsequently divorced pursuant to a final judgment of divorce dated December 19, 1983 ("Divorce Judgment"). The Divorce Judgment provided, among other things, that the Separation

Agreement was to survive the Divorce Judgment.

Other portions of the Separation Agreement relevant to the within dispute provide:

### ARTICLE IV

### RESPONSIBILITY FOR DEBTS

(b) The [Debtor] covenants at all times to keep the [Plaintiff] free, harmless and indemnified of and from any and all debts, charges or liabilities heretofore contracted or incurred by [Debtor] individually or jointly with the [Plaintiff] for which [they] are, or may become liable.

. . . . .

### ARTICLE IX

### SUPPORT AND MAINTENANCE

The [Debtor] shall pay the [Plaintiff], as and for her support and maintenance, . . . the sum of $250.00 per week, which payment shall be treated as unallocated support and maintenance of the [Plaintiff] . . . until the earliest happening of one of the following events:

(a) The death of either of the parties hereto; or,

(b) The remarriage of the [Plaintiff]. . . .

. . . . .

### ARTICLE XII

### MARITAL ABODE

(b) Upon the event of remarriage of the [Plaintiff], the [Plaintiff] shall pay in cash to the [Debtor] one-half (½) of the fair market value [of the marital home]. . . .

(e) The [Debtor] agrees to pay and keep in full force and effect insurance on the said premises and agrees further to pay all real estate taxes and mortgage payments. . . .

Separation Agreement between Plaintiff and Debtor, dated October 12, 1982.

Plaintiff alleges that Debtor failed to make the mortgage payments required by Article XII(e) for the period March, 1983 through February, 1985. (Plaintiff's Complaint, dated March 17, 1992, at 2.) As a result, Plaintiff was compelled to seek refinancing to prevent foreclosure and cure the loan default by satisfying it in full.

In May of 1987, Plaintiff remarried. Under Article XII of the Separation Agreement, this event triggered Plaintiff's obligation to pay Debtor one-half of the fair market value of the marital residence. Debtor subsequently instituted an arbitration proceeding to have the fair market value of the residence determined. In November of 1988, an arbitrator determined the fair market value of the parties' marital home to be $370,000, and pursuant to the terms of the Separation Agreement awarded Debtor judgment against Plaintiff in the sum of $194,792.00 (half the value of the residence, $185,000, plus $9,972.00 in interest). The arbitrator's ruling became a judgment upon confirmation by a New York state court, and the judgment was satisfied by Plaintiff in 1989.

During Debtor's arbitration proceeding, Plaintiff asserted a counter-claim against Debtor for a money award or for a setoff of the amount of mortgage payments Debtor failed to make. She also sought reimbursement for her costs expended for the refinancing required when Debtor defaulted. Plaintiff's cross-claims were denied by the arbitrator, but without prejudice to resubmit them in another proceeding, which Plaintiff instituted in 1990.

In her arbitration proceeding, Plaintiff sought a determination of Debtor's liability for his failure to pay the mortgage debt under the terms of the Separation Agreement. The arbitrator heard testimony from the parties. Certain testimony given by Plaintiff has emerged as pivotal in this proceeding, and is discussed within our Legal Analysis.

Plaintiff nevertheless prevailed and, in a decision dated June 19, 1990, the arbitrator ruled that Debtor breached the parties' Separation Agreement. Debtor was also found responsible for the costs of the refinancing required for Plaintiff to cure Debtor's default, including the principal amount of the loan, the interest and all consequential costs, for an amount of $42,560. The arbitrator's ruling was confirmed by the Richmond County Supreme Court in an order dated December 12, 1990, which added $8,384.77 as ac-

crued interest; thus, the total amount due Plaintiff became $50,944.77.

Debtor filed a voluntary petition for bankruptcy relief under chapter 7 of title 11, United States Code ("Bankruptcy Code" or "Code") on August 16, 1991.

As stated, Plaintiff commenced the instant Adversary Proceeding seeking judgment determining $50,057.42 of her judgment against Debtor to be non-dischargeable. Plaintiff alleges that the debt is in the nature of alimony, maintenance and support, which is the type of debt excepted from discharge under section 523(a)(5) (quoted below) of the Code. Plaintiff's allegations as to the nature of the debt, and that it is non-dischargeable, are denied by Debtor. (Debtor's Answer, dated April 17, 1992 at 2.) Both parties subsequently moved for summary judgment on the issue of dischargeability, and the parties' respective oral arguments were heard by the Court.

### LEGAL ANALYSIS

■ The exception from discharge of debts for alimony, maintenance or support derives from section 523(a)(5) of the Bankruptcy Code, entitled "Exceptions to Discharge"; in part, the section provides:

A discharge under . . . this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a govern-

mental unit, or property settlement agreement, but not to the extent that— . . . such debt includes a liability designated as alimony, maintenance, or support, unless such liability is *actually in the nature of* alimony, maintenance or support[.]

11 U.S.C. § 523(a)(5)(B) (1994) (emphasis ours).[1] Accordingly, the question is routinely whether the debt is actually in the nature of alimony, maintenance or support. *Id.*

■ If an obligation by a debtor to his or her former spouse is not actually in the nature of alimony, maintenance or support, but rather comprises a property settlement or division of marital property between the former spouses, then the obligation is fully dischargeable in bankruptcy. *Brody v. Brody*, 3 F.3d 35, 38 (2d Cir.1993) (citing *Donahue v. Donahue (In re Donahue)*, 862 F.2d 259, 262 (10th Cir.1988); *In re Coil*, 680 F.2d 1170, 1171 (7th Cir.1982) (citing *In re Maitlen*, 658 F.2d 466 (7th Cir.1981))); *Shine v. Shine (In re Shine)*, 802 F.2d 583, 586 (1st Cir.1986); *Kavanakudiyil v. Kavanakudiyil (In re Kavanakudiyil )*, 143 B.R. 598, 601–02 (Bankr.S.D.N.Y.1992); *Schmerzler v. Goodnight (In re Goodnight )*, 102 B.R. 799, 802 (D.Kan.1989).

■ Whether an obligation is one of alimony, maintenance or support is a question of federal bankruptcy law, not state law. *Mackey v. Kaufman (In re Kaufman)*, 115 B.R. 435, 439–40 (Bankr.E.D.N.Y.1990) (citing cases); *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir. 1983).

"Under bankruptcy law, the *intent* of the parties at the time a separation agreement is executed *determines* whether a payment pur-

---

1. Germane to this proceeding, section 523(a)(5) also excepts from discharge a debtor's obligation to satisfy the debts of his or her spouse, where such obligation is itself in the nature of alimony, support or maintenance:

This provision will . . . make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on any joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

HR Rep No. 595, 95th Cong. 1st Sess. 364 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6320, *reprinted at* Norton Bankruptcy Code Pamphlet 447 (1993–94) (hereinafter Norton Code"); *e.g.*, 124 Cong.Rec. H11096, *reprinted at* Norton Code at 448 ("If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child.").

suant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5)." *Brody v. Brody* (*In re Brody*), 3 F.3d 35, 38 (2d Cir.1993) (emphasis ours) (citing *Davidson v. Davidson* (*In re Davidson*), 947 F.2d 1294, 1296–97 (5th Cir.1991); *Gianakas v. Gianakas* (*In re Gianakas*), 917 F.2d 759, 762 (3d Cir.1990)); *e.g., Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717, 722–23 (10th Cir.1993) (citations omitted); *Morel v. Morel* (*In re Morel* ), 983 F.2d 104, 105 (8th Cir.1992); *Davidson v. Davidson* (*In re Davidson*), 947 F.2d 1294, 1296 (5th Cir.1991); *Long v. West* (*In re Long*), 794 F.2d 928, 931 (4th Cir.1986); *Telgmann v. Maune* (*In re Maune*), 133 B.R. 1010, 1014 (Bankr.E.D.Mo.1991) (the court must "determine what function the award was intended to serve and on that basis either discharge it as a property settlement or except it from discharge as a support obligation.").

Bankruptcy courts have developed a number of factors to be considered in ascertaining the parties' intent, and in determining whether a particular obligation is a dischargeable property settlement or a non-dischargeable obligation for support or maintenance; a non-exhaustive list of such factors routinely includes the following:

(1) whether the obligation terminates upon the death or remarriage of either spouse, upon any children reaching majority or upon some other similar event;

(2) how the obligation is characterized in the parties' settlement agreement or divorce decree, and the context in which it appears;

(3) whether the payments appear to balance disparate income between the former spouses;

(4) whether the payments are to be made directly to the spouse or to a third party;

(5) whether the payment is payable in a lump sum or in installments over time;

(6) whether the parties intended to create an obligation of support or to divide marital property;

(7) whether an assumption of debt has the effect of providing necessary support to insure that the daily needs of the former spouse and any children of the marriage are met;

(8) whether an assumption of debt has the effect of providing support necessary to insure a home for the non-debtor spouse and his or her minor children.

*Mackey v. Kaufman* (*In re Kaufman*), 115 B.R. 435, 440–41 (Bankr.E.D.N.Y.1990) (numerous citations given); *see also Goin v. Rives* (*In re Goin*), 808 F.2d 1391, 1392–93 (10th Cir.1987) (citing *Shaver v. Shaver* (*In re Shaver*), 736 F.2d 1314, 1316 (9th Cir. 1984); *Schmerzler v. Goodnight* (*In re Goodnight* ), 102 B.R. 799, 801 (D.Kan.1989).

The analysis should, and ours therefore will, begin with the parties' intent. *E.g., Kaufman*, 115 B.R. at 440 [2]; *see Brody v. Brody* (*In re Brody*), 154 B.R. 408, 413 (E.D.N.Y.1993); *Freyer v. Freyer* (*In re Freyer*), 71 B.R. 912, 916 (Bankr.S.D.N.Y. 1987). Whether former spouses intended that an obligation serve as support or provide for a division of marital assets, a court should give effect to the parties' intentions. Where the intention of the parties is in dispute and is not clear, the multi-factor test is utilized in an attempt to draw the most accurate conclusion possible of what the parties intended. *Kaufman*, 115 B.R. at 440. If the parties' intent is ascertainable, however, further analysis should be unnecessary.

Such is the case in the Adversary Proceeding at bar. Plaintiff's intent was explicitly elicited through her testimony given during the arbitration proceeding she commenced in 1990 (for a judgment determining Debtor's liability for his defaults under the Separation Agreement). During cross-examination, Plaintiff was asked what she believed was the parties' intentions in connection with

---

2. "The initial inquiry a Court must make in determining whether the provisions of a Separation Agreement are in the nature of alimony or support is to ascertain whether the parties to the agreement 'intended' to create a support obligation or intended to divide the property amica-

bly." *Kaufman*, 115 B.R. at 440 (citing, *e.g., In re Calhoun*, 715 F.2d 1103, 1107 (6th Cir.1983); *In re Long*, 794 F.2d 928, 930 (4th Cir.1986); *Melichar v. Ost*, 661 F.2d 300, 303 (4th Cir. 1981)).

Debtor's obligation to satisfy the remaining mortgage payments upon the marital residence. Her testimony depicts that it was her understanding that the parties were engaging in an exchange of property. The relevant portion of the transcript which includes the testimony given by Plaintiff provides:

> [Mr. Kinzler] Q. As to real estate taxes and mortgage payments, wasn't it your intention and agreement that that would terminate on your remarriage?
>
> [Plaintiff] A. No. My understanding was that that was a bone he was throwing to me because I gave up half the business.
>
> .    .    .    .    .
>
> [Mr. Kinzler] Q. Do you recall telling David [Debtor] that you were not prepared to pay him for his interest in the house [upon your remarriage]?
>
> .    .    .    .    .
>
> A. What I said was that I didn't think he deserved any of it because he didn't pay me for a share of the business. . . .

Tr. of Arbitration Hearing, *Berg v. Berg*, Before Marilyn R. Friedenberg, Index No. 5840/83, Held March 2, 1990 and May 18, 1990, Supreme Court of New York, County of Richmond.

Plaintiff's testimony clearly establishes her intent to give up any share of the business of Debtor in exchange for Debtor's satisfaction of the outstanding mortgage lien upon the marital residence. The testimony of Plaintiff constitutes an admission. Fed.R.Evid. 801(d)(2) (1994)) (made applicable by Fed.R.Bankr.P. 9017 (1994)). The testimony was given before any connection with the instant Adversary Proceeding and no reason has been given not to deem it reliable.

Furthermore, Plaintiff *did not controvert* the only conclusion that may be drawn from her own statements. In his papers, Debtor cited to this testimony and annexed copies of the transcript, arguing that Plaintiff's intention can be dispositively surmised. Plaintiff did not respond to Debtor's argument. There consequently exists no material issue of fact regarding Plaintiff's intent. Fed.R.Civ.P. 56(e) (1994) (made applicable by Fed.R.Bankr.P. 7056 (1994). Rule 56 instructs:

> "When a motion for summary judgment is made and supported as provided in this rule, ... the adverse party's response, by affidavits or as otherwise provided in this rule, *must* set forth specific facts showing there is a genuine issue for trial."

*Id.* (emphasis ours). This Plaintiff has not done.

Summary judgment is accordingly proper:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c) (1994).

As stated, the only issue before the Court is whether Debtor's obligation was incurred in exchange for property or to provide needed support, and the parties' intent governs the Court's determination. A determination of this issue is possible from the papers, pleadings and evidence submitted; no trial is necessary. *Id.* Debtor has shown that it was the parties' intention that his obligation was assumed in exchange for a release of all Plaintiff's claims to his business, and thus the obligation was not in the nature of support, alimony or maintenance, but was in the nature of a dischargeable property settlement. Plaintiff has not shown that there is a genuine issue as to this material fact.

For all the reasons discussed, the Court holds that Debtor's motion for summary judgment is **GRANTED**; Plaintiff's motion for summary judgment is **DENIED**; Debtor's obligation to Plaintiff, for all payments to satisfy the mortgage obligation on the parties' marital residence, which amount was reduced to judgment by Plaintiff, is **DISCHARGEABLE**.

**SO ORDERED DECREED AND ADJUDGED.**